No. 90-032

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,

     Plaintiff and Respondent,

  -vs-

CLARENCE CHAMPAGNE,

     Defendant and Appellant.

'90 OCT 23 PM 2 25
MONTANA SUPREME COURT
ED SMITH, CLERK
FILED

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Russell K. Fillner, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

        Arthur J. Thompson, Thompson & Sessions, Billings,
        Montana

     For Respondent:

        Hon. Marc Racicot, Attorney General; Elizabeth L.
        Griffing, Asst. Atty. General, Helena, Montana
        Harold Hanser, County Attorney; Teresa O'Connor,
        Deputy County Attorney, Billings, Montana

Submitted on Briefs:  September 6, 1990

Decided:  October 23, 1990

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

The District Court of the Thirteenth Judicial District, Yellowstone County, revoked defendant's suspended sentence to five years in the Montana State Prison. Defendant appeals this order. We affirm.

The issue before this Court for review is whether the defendant was denied due process of the law.

On December 29, 1988, Clarence Champagne, defendant, was charged by information with the offense of conspiracy as defined by § 45-4-102, MCA. On May 9, 1989, Champagne entered a plea of guilty to the offense, and on June 27, 1989, he was sentenced to the Montana State Prison. The sentence was completely suspended on a special condition that he abide by the rules of the Intensive Supervision Program.

On or about October 3, 1989, a Petition for Revocation of Suspended Sentence was filed. A hearing was set on the petition for October 17, 1989. On October 17, 1989, defendant appeared with counsel and admitted the truth of the allegations contained in the petition. Based on the evidence presented, the District Court found that the defendant violated the terms of his suspended sentence. The District Court set pronouncement of judgment for November 14, 1989.

On November 14 1989, defendant appeared with counsel and, after hearing testimony, the District Court continued the

sentencing until November 21, 1989. On November 21, 1989, the District Court revoked defendant's suspended sentence, and ordered him to serve a term of five years in the Montana State Prison. From this order revoking defendant's suspended sentence defendant now appeals. We affirm the District Court's revocation of defendant's suspended sentence.

The facts are as follows:

On the morning of December 25, 1988, defendant and two other men were involved in the robbery of a Kwik Way convenience store in Billings, Montana. Defendant was the driver of the car used by the three men and remained in the car during the robbery. Defendant was charged with, and plead guilty to, conspiracy.

Prior to sentencing, the District Court reviewed defendant's presentence report which reflected a history of drug and alcohol abuse. The District Court then sentenced Champagne to a five year term in the Montana State Prison. The sentence was suspended on the usual conditions of probation. Under these conditions defendant was not to drink any intoxicating liquor or use any narcotic or dangerous drugs without a doctor's prescription and to conduct himself in a law abiding manner. In addition, defendant was to abide by the rules of the Intensive Supervision Program, which is an intensive out-patient program. Defendant was expressly told that any violation of the rules of the Intensive Supervision Program could result in the revocation of his suspended sentence.

On October 4, 1989, a petition for revocation of the order

suspending the sentence was filed with the District Court. A report from Randy Gowen, defendant's probation officer, was attached to the petition and outlined the reasons supporting revocation of the suspended sentence. In the report, the probation officer stated that in the late evening hours of September 16, 1989, defendant assaulted his girlfriend outside of a Super-America convenience store. Witnesses stated that he pulled her hair, twisted her arm and dragged her on the ground until defendant had her on the east side of the building, where he continued to punch and kick her while she lay on the ground. At that time defendant began stomping on her head and quit only when he heard the police approaching.

On October 17, 1989, a hearing was held before the District Court on the revocation petition. At this hearing the defendant admitted to the truth of all the allegations contained in the petition. In particular, the defendant admitted that he did violate Intensive Supervision Rules Nos. 1, 9, and 14; and Court Rules Nos. 1 and 3. With respect to the above rules, the District Court found the defendant to have violated the following:

Intensive Supervision Rule No. 1 in that defendant on September 16, 1989, was out of his residence without permission of his supervising officer.

Intensive Supervision Rule No. 9 and Court Rule No. 1 in that the defendant indicated that on the evening of September 16, 1989, he had consumed a handful of pills and was drinking alcohol.

4

Intensive Supervision Rule No. 14 and Court Rule No. 3 in that the defendant on September 16, 1989, violently attacked and assaulted his girlfriend beside a convenience store. Her injuries required that she be placed in the hospital overnight for observation. She received many cuts, scratches, contusions and hematomas as a result of the attack.

Pronouncement of judgment was set for November 14, 1989.

At the November 14 hearing, defendant again admitted the truth of the allegations contained in the petition. Defendant also testified that he had voluntarily tried to obtain treatment for his alcohol and drug abuse problems but was denied that opportunity by those in the Intensive Supervision Program. The State called no witnesses. The District Court deferred the sentencing hearing for one week until November 21, 1989.

At the commencement of the hearing on November 21, 1989, the District Court noted that defendant's probation officer, Mr. Gowen, had not testified at the November 14 hearing but was now present and could be called by the State as a witness. Over objection of defense counsel, Mr. Gowen was allowed to testify.

Gowen testified that defendant had requested residential treatment but was denied residential treatment because he had already been through a number of residential treatment programs from which he had not ostensibly benefitted. Defendant himself verified that he had attended at least four residential treatment centers in the towns of Glasgow, Hazelton, Sheridan and Galen.

After the November 21 hearing the District Court issued its written order revoking defendant's suspended sentence.

Additional facts will be presented as necessary.

The issue is whether defendant was denied due process of the law.

Defendant claims that the District Court's decision to revoke his suspended sentence was based on improper ex parte communication between the probation officer and the District Court which occurred during the week the November 14 sentencing hearing was deferred. Defendant argues that this ex parte communication violated his rights to due process. At the November 21 sentencing hearing, Mr. Gowen was examined and testified regarding his communication with the District Court.

> Q. [By defense counsel] Is it fair to say that you and members of your office were disturbed that Mr. Champagne did not have his suspended sentence revoked last week?
>
> A. [By Mr. Gowen] Surprised.
>
> Q. It was your understanding that his suspended sentence had not been revoked; is that correct?
>
> A. I did not think he had his sentence revoked, but that the action was still pending, and that I was to come to court and give this version of the story.
>
> Q. Was that something you learned from what happened last Tuesday, or something you learned from discussing the matter with Judge Fillner between last Tuesday and now?
>
> A. I believe I discussed the case with you that very same day, and with other people in my office, then later with Judge Fillner.

Q. And you and other members of your office have had ex parte communications with the Court with regard to this matter?

A. Ex parte, meaning what?

Q. Meaning by yourself.

A. Just you and the Judge. I discussed it briefly with Judge Fillner.

Q. Were counsel for either party present?

A. No. I had talked to you early last week about the same matter and my feelings.

Mr. Thompson: Nothing further.

Our inquiry is whether the admitted ex parte communication between Gowen and the District Court was designed to "influence judicial action", thereby denying appellant due process.

The record before us on review is wanting of objective evidence which establishes that Gowen's private discussion with the District Court was "designed to influence" the District Court's revocation of defendant's suspended sentence. During cross exam, defense counsel had the opportunity to inquire of Gowen the specific details of Gowen's ex parte communication with the District Judge, but did not do so. Such inquiry on cross-examination could have elicited what statements Gowen made to the District Judge, and the purpose Gowen had in making the ex parte communication. Rather, defense counsel only established that the communication between Gowen and the District Court was, in fact, private or ex parte.

Because the record fails to disclose any material evidence

that the ex parte communication of Gowen with the District Judge was intended to or did influence the court in revoking appellant's suspended sentence, we hold that defendant was not denied due process and affirm the District Court in revoking defendant's suspended sentence.

Defendant next contends that the hearing on November 14 resulted in a final order that denied revocation of the suspended sentence. Defendant further contends that the District Court cannot, at a later date, revise this final order based on ex parte communications. We find that defendant's characterization of the November 14 hearing is incorrect.

On November 14, the District Court stated that it would give defendant "one more chance" but then tempered this statement by deferring the revocation hearing until November 21. It appears from the record that the November 14 hearing was deferred so that the evidence and testimony presented could be reviewed together with testimony from Gowen regarding defendant's statement in court that he was prevented by his supervising officer from attending a mental health center.

Indeed, on November 21, Gowen's testimony was allowed solely to rebut defendant's earlier testimony that defendant was denied voluntary residential treatment by those at the Intensive Supervision Program. We further find that no order was signed at the conclusion of the November 14, 1989 hearing. One week intervened while this hearing to revoke the suspended sentence was

deferred. At the close of the November 21, 1989 hearing, the District Court signed a final order revoking the suspended sentence. This order was based on substantial evidence contained in the record on appeal. We find that the record on appeal is replete with substantial evidence to support the revocation of the suspended sentence. We hold that the District Court did not deny defendant his right to due process by revoking his five year suspended sentence. The District Court's order is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

Justice Diane G. Barz did not participate.

9

Justice John C. Sheehy, concurring:

The record fails to show what influence, if any, the ex parte communication before the November 21 hearing of Gowan had on the district judge.  For that reason, I agree with the Opinion.

I suppose in this work-a-day world of handling and sentencing convicted criminals, out-of-court contacts between judges and their probation officers are bound to occur.  When the appearance arises, as in this case, that such a contact occurred which may have swayed the Court to change its mind, the gloss of fairness in the system, as perceived by the defendant, dissipates.  I suggest to all of the judiciary that pre-sentence reports in writing, with access thereto for all counsel, without oral amplification except in open court, is by far the better way to proceed.

_John C. Sheehy_
Justice